**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GRAHAM ENGINEERING CORP.,** | : | **CIVIL ACTION NO. 1:18-CV-405** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN BRUNELLE and** | : | |
| **PROSYSTEMS INTEGRATION, LLC,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Graham Engineering Corp. ("Graham Engineering") commenced this action against defendants John Brunelle ("Brunelle") and ProSystems Integration, LLC ("ProSystems"), asserting claims of breach of implied contract, tortious interference with business relations, and civil conspiracy. Defendants move to dismiss Graham Engineering's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 9).

## I.    Factual Background & Procedural History

Graham Engineering is a Pennsylvania corporation specializing in, *inter alia*, package design, plastic processing, and extruder systems. (Id. ¶¶ 2, 8). Graham Engineering maintains a principal place of business in York, Pennsylvania. (Id. ¶ 2). ProSystems, a company organized in Rhode Island with a principal place of

business therein, designs control systems for its customers.[1]  (Id. ¶¶ 3, 11).  Brunelle

is the president of ProSystems and a citizen of Connecticut.  (Id. ¶¶ 4, 10).

American Kuhne, a manufacturer of "extruders, extruder systems, extruder

services[,] and other downstream equipment," contracted with ProSystems to

supply specific control systems (known as "AKcess" systems) to each of American

Kuhne's customers.  (Id. ¶¶ 9, 12, 14-18).  American Kuhne was originally located in

Rhode Island.  (Doc. 10-2 ¶ 22; see Doc. 1 ¶ 28).  Graham Engineering purchased an

80% interest in American Kuhne in September 2012.  (Doc. 1 ¶ 19).  After Graham

Engineering acquired this controlling interest, ProSystems continued to supply

AKcess systems to American Kuhne upon request from 2012 to 2016.  (Id. ¶¶ 22-23,

25-26; see id. ¶ 34).  In January 2016, Graham Engineering purchased the remaining

20% interest in American Kuhne and became its sole owner.  (Id. ¶ 27).  Graham

Engineering then relocated American Kuhne's manufacturing operations to

Pennsylvania.  (Id. ¶ 28).

The parties offer competing declarations concerning the nature of

ProSystems' interactions with Graham Engineering.  David Schroeder

("Schroeder"), president and chief executive officer of Graham Engineering, asserts

that Brunelle routinely visited Pennsylvania to perform work for and build

relationships with Graham Engineering and its customers.  (Doc. 15-1 ¶¶ 9-10).  He

---

[1] The complaint alleges that ProSystems is a corporation.  (Doc. 1 ¶ 3).  In his
declaration, Brunelle avers that ProSystems is actually a limited liability company.
(Doc. 10-2 ¶ 2).  For the sake of simplicity, and because the distinction is not
pertinent to our analysis, we will refer to ProSystems as a company.

further asserts that other ProSystems' employees travelled to Pennsylvania to perform work for Graham Engineering's customers. (<u>Id.</u> ¶ 13). Schroeder also states that the parties engaged in regular conference calls, often multiple times each week, to discuss open projects. (<u>Id.</u> ¶¶ 11-12). According to Brunelle, ProSystem' staff primarily interacted with personnel in Graham Engineering's Connecticut office. (Doc. 10-2 ¶ 25; <u>see</u> <u>id.</u> ¶ 24). He avers that ProSystems does not have employees, offices, property, or phone numbers in Pennsylvania, and that ProSystems is not registered to do business in Pennsylvania. (<u>Id.</u> ¶¶ 5-6, 8-9, 10, 12).

After acquiring American Kuhne, Graham Engineering issued offers of continued employment to certain American Kuhne employees. (Doc. 1 ¶ 29). All American Kuhne employees who accepted employment with Graham Engineering signed restrictive covenants. (<u>Id.</u> ¶¶ 30-31). Employees who declined the offer remained subject to restrictive covenants executed with American Kuhne. (<u>Id.</u> ¶ 32). According to the complaint, Brunelle began meeting with former American Kuhne employees and current Graham Engineering employees in July 2016 to form a new company, U.S. Extruders. (<u>Id.</u> ¶ 35). Brunelle purportedly pursued the formation of this new entity despite his knowledge that many of these employees were subject to restrictive covenants which would prohibit their formation of an entity in competition with American Kuhne and Graham Engineering. (<u>Id.</u> ¶ 36). Brunelle obtained a U.S. Extruders email address and joined an email group with former American Kuhne employees and current Graham Engineering employees. (<u>Id.</u> ¶¶ 37-38). The individuals in this email group allegedly integrated ProSystems with U.S. Extruders. (<u>See</u> <u>id.</u> ¶ 43).

Graham Engineering avers that Brunelle and ProSystems thereafter took steps to end the parties' relationship.  In August 2016, ProSystems increased the pricing offered to Graham Engineering and created a "minimum order charge policy."  (Id. ¶ 44).  The following July, Brunelle informed Graham Engineering that ProSystems was relocating to a building also occupied by U.S. Extruders.  (Id. ¶ 45).  And in October 2017, ProSystems started refusing to provide Graham Engineering with "customer-specific downloads of control systems" that Graham Engineering had previously ordered.  (Id. ¶ 46).  Brunelle also began "no-quoting" Graham Engineering.  (Id. ¶ 47).  On October 31, 2017, Brunelle sent a letter to Graham Engineering notifying it of ProSystems' termination of the parties' mutual non-disclosure agreement.  (Id. ¶ 48).

Graham Engineering commenced this action advancing a claim for breach of implied contract against ProSystems (Count I), claims of tortious interference with business relations against both Brunelle and ProSystems (Counts II and III), and a claim of civil conspiracy against Brunelle (Count IV).  Defendants move to dismiss all counts under Federal Rule of Civil Procedure 12(b)(2).  The motion is fully briefed and ripe for disposition.

## II.    **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction.  FED. R. CIV. P. 12(b)(2).  In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor.  Pinker v. Roche Holdings Ltd., 292 F.3d

4

361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990) (citation omitted); see Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). In the absence of a hearing, a court must accept the plaintiff's jurisdictional allegations as true and construe any disputed facts in favor of the plaintiff. Id. (citations omitted); O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007). Once a defendant has challenged the court's exercise of personal jurisdiction, the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper." Metcalfe, 566 F.3d at 330 (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)). When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See id. at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

## III. Discussion

A federal court may assert personal jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum. See FED. R. CIV. P. 4(k)(1)(A). The Pennsylvania Long-Arm Statute grants jurisdiction coextensive

with that permitted by the Due Process Clause of the Fourteenth Amendment.
42 PA. CONS. STAT. § 5322(b). Our constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310 (1945). Under this test, the plaintiff must show that the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (internal quotation marks and citation omitted); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that he may be subject to suit in that forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001); Marten, 499 F.3d at 296. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (internal citation omitted).

A federal court must possess one of two forms of personal jurisdiction to comport with these principles. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-15 (1984)). General jurisdiction allows a court to exercise jurisdiction over all claims against a party that possesses contacts with the forum state so "'systematic and continuous' as to render them essentially at home" therein. Daimler AG v. Baumen, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Helicopteros, 466

U.S. at 414 n.9)); <u>Chavez v. Dole Food Co., Inc.</u>, 836 F.3d 205, 223 (3d Cir. 2016) (*en banc).*  Specific jurisdiction, on the other hand, allows the court to hear only claims arising out of or relating to the defendant's contacts with the forum state. <u>Helicopteros</u>, 466 U.S. at 414 n.8; <u>Telcordia Tech Inc. v. Telkom SA Ltd.</u>, 458 F.3d 172, 177 (3d Cir. 2006).

Defendants argue that the court may not exercise general jurisdiction over Graham Engineering's claims because neither Brunelle nor ProSystems has the systematic and continuous contacts with Pennsylvania necessary to render them "at home" in the Commonwealth.  They further aver that the court may not exercise specific jurisdiction because both defendants lack sufficient minimum contacts with Pennsylvania.  We begin with defendants' general jurisdiction arguments.

### A.    General Jurisdiction

A federal court may exercise general jurisdiction over an individual domiciled in the forum state.  <u>Goodyear</u>, 564 U.S. at 924; <u>Comerota v. Vickers</u>, 170 F. Supp. 2d 484, 487 (M.D. Pa. 2001) (citing 42 PA. CONS. STAT. § 5301(a)(1)(ii)). When an individual party is present in the Commonwealth at the time of service or consents to jurisdiction, a federal court may also exercise general jurisdiction over that party in Pennsylvania.  <u>Comerota</u>, 170 F. Supp. at 487 (citing 42 PA. CONS. STAT. § 5301(a)(1)(i), (iii)).   Brunelle is domiciled in Connecticut, (Doc. 1 ¶ 4; Doc. 10-2 ¶ 4), and Graham Engineering does not contend that Brunelle was served in or otherwise consented to jurisdiction in Pennsylvania.  The court cannot subject Brunelle to general jurisdiction in Pennsylvania for any of Graham Engineering's claims against him.

For a corporation to be subject to the court's general jurisdiction, the corporation's contacts with the forum state must be so "continuous and systematic" as to render it "essentially at home" in the forum state. Daimler, 571 U.S. at 127 (citations omitted). Absent the exceptional case, a corporation is "at home" in only two places: its state of incorporation and its principal place of business. Daimler, 571 U.S. at 137-39 & n.19; see also Chavez, 836 F.3d at 223. ProSystems is a company organized in Rhode Island, (Doc. 1 ¶ 3; Doc. 10-2 ¶ 2), and its principal place of business is in Rhode Island, (Doc. 1 ¶ 3; Doc. 10-2 ¶ 3). It has no offices, employees, property, phone numbers, or bank accounts in Pennsylvania. (Doc. 10-2 ¶¶ 6, 8-13). It is not registered, nor has it ever been registered, to do business in the Commonwealth. (Id. ¶ 5). Hence, ProSystems is not "at home" in Pennsylvania. The court is prohibited from exercising general jurisdiction over ProSystems for Graham Engineering's claims against it.

## B.  Specific Jurisdiction

To exercise specific jurisdiction over a defendant, the court must find that (1) the defendant purposefully directed its activities at the forum, (2) each cause of action "arise[s] out of or relate[s] to at least one" of the defendant's activities, and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." D'Jamoos, 566 F.3d at 102 (internal quotation marks and citations omitted); O'Connor, 496 F.3d at 317. The purposeful availment and relatedness inquiries are often described as requiring "minimum contacts" between the defendant and the relevant forum. In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 558 (M.D. Pa. 2009) (Conner, J.) (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d

446, 451 (3d Cir. 2003)).  The defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum," but physical presence within the forum is not required.  O'Connor, 496 F.3d at 317 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  "Unilateral activity" by a plaintiff "claim[ing] some relationship with a nonresident defendant" is insufficient to establish that the defendant purposely directed its activities at the forum.  D'Jamoos, 566 F.3d at 103 (quoting Hanson, 357 U.S. at 253); O'Connor, 496 F.3d at 317.  Determinations of specific jurisdiction are generally claim specific because "the analysis depends on the relationship between the claims and contacts."  Martin, 499 F.3d at 296 (citing Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (collecting cases)).

The court must also inquire whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."  See Int'l Shoe, 326 U.S. at 316.  Jurisdiction is presumptively constitutional upon a finding of minimum contacts, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  See Burger King, 471 U.S. at 477.  Showing an absence of fairness or lack of substantial justice requires the defendant to overcome a heavy burden.  Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.3d 476, 483 (3d Cir. 1993).  To determine jurisdictional reasonableness, the court must balance the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining efficient relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in

furthering fundamental substantive social policies.  O'Connor, 496 F.3d at 324

(citing Burger King, 471 U.S. at 477).

### 1.    *Breach of Implied Contract Claim*

The existence of a contract between a resident plaintiff and nonresident

defendant does not, without more, establish minimum contacts with the resident

plaintiff's forum.  Mellon Bank, 960 F.2d at 1223.  Courts must consider the totality

of the circumstances when determining whether minimum contacts exist.  Remick,

238 F.3d at 256 (citing Mellon Bank, 960 F.2d at 1223); see Vetrotex Certainteed

Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 152-53 (3d Cir. 1996).  Of

significant import are prior negotiations, contemplated future consequences, the

contract's terms, and the parties' actual course of dealing.  Remick, 238 F.3d at 256;

Mellon Bank, 960 F.2d at 1223.  Additional considerations include where the

services under the contract were performed and whether the challenging party

should have known the services would be performed there.  See Remick, 238 F.3d

at 256.  Actual presence during pre-contractual negotiations, performance, and

resolution of post-contract difficulties is generally factored into the jurisdictional

analysis, id. at 255-56, but physical presence within the forum state is not required

to establish minimum contacts, O'Connor, 496 F.3d at 317 (citing Grand Entm't

Grp., 988 F.2d at 482).  A defendant "reaching out and creating continuing

relationships and obligations" within the forum will satisfy the minimum contacts

test.  Burger King, 471 U.S. at 473 (citations omitted).

ProSystems engaged in a contractual course of dealing sufficient to establish

minimum contacts with Pennsylvania.  After Graham Engineering acquired a

controlling interest in American Kuhne and relocated the latter's operations to Pennsylvania, ProSystems maintained a business relationship with American Kuhne by continuing to supply AKcess systems and corresponding downloads. (Doc. 1 ¶¶ 22-23, 28, 33-34).  When Graham Engineering submitted a purchase order, ProSystems sent an invoice to Graham Engineering detailing ProSystems' terms and conditions, (Doc. 10-2 ¶ 26; Doc. 15-1 ¶ 14), and then produced the final product for Graham Engineering, (see Doc. 1 ¶¶ 22-23, 34).  This course of dealing continued for over four years.  (See id. ¶¶ 19, 48).  ProSystems also engaged in negotiations regarding "price increases and changes in payment terms" with Graham Engineering between July 2016 and October 2017.  (Doc. 15-1 ¶ 7).

Acting on behalf of ProSystems, Brunelle routinely travelled to Pennsylvania with his team to perform work for Graham Engineering's customers and resolve issues with existing projects.[2]  (Doc. 15-1 ¶ 9).  Graham Engineering hosted Brunelle for business dinners focused on improving ProSystems' financial situation, and the parties conducted multiple weekly calls to review open projects.  (Id. ¶¶ 10-12). ProSystems knew or should have known that performance of the implied contract with Graham Engineering (and American Kuhne) would occur in Pennsylvania and that a significant portion of Graham Engineering's business was conducted in the state.  ProSystems, by and through its agents, engaged in an ongoing business relationship with Graham Engineering that entailed performance of contractual

---

[2] In his affidavit, Brunelle notably only disclaims traveling to Pennsylvania "in association with the formation or operation of U.S. Extruders."  (Doc. 10-2 ¶ 31).

duties and at times required physical presence in Pennsylvania. ProSystems created sufficient minimum contacts to confer the court's jurisdiction in Pennsylvania over the breach of implied contract claim. And ProSystems fails to overcome its heavy burden of showing that jurisdiction in the state is unreasonable. (See Doc. 10 at 9-10; Doc. 20 at 11-12). Accordingly, we will deny ProSystems' motion to dismiss to the extent it pertains to the breach of implied contract claim.

### 2. *Remaining Claims*

Graham Engineering has not established specific jurisdiction over defendants as to its remaining claims for tortious interference with business relations and civil conspiracy under the traditional minimum contacts test. Defendants purportedly encouraged and assisted former American Kuhne employees and current Graham Engineering employees to violate their restrictive covenants by forming U.S. Extruders to compete with Graham Engineering. (Doc. 1 ¶¶ 62-64, 71). Defendants also allegedly withheld customer-specific downloads and began "no-quoting" Graham Engineering. (Id. ¶¶ 69-70). Graham Engineering claims that Brunelle conspired with these former and current employees to violate the restrictive covenants and compete for Graham Engineering's customers. (Id. ¶¶ 75-78). The complaint is silent as to where any of this alleged conduct occurred. (See id. ¶¶ 35-47). We cannot conclude that Graham Engineering's tortious interference and civil conspiracy claims arose from defendants' conduct in Pennsylvania.

### C.    Intentional Torts: "Effects Test"

A plaintiff advancing an intentional tort claim may alternatively establish specific jurisdiction under the "effects test" outlined in <u>Calder v. Jones</u>, 465 U.S. 783 (1984).  <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 259-60 (3d Cir. 1998).  Under the effects test, a court may exercise specific jurisdiction over a defendant when the plaintiff shows that (1) the defendant committed an intentional tort; (2) "[t]he plaintiff felt the brunt of the harm in the forum" rendering that forum the "focal point" of the harm resulting from the tort; and (3) the forum is the "focal point" of the tortious activity because "the defendant expressly aimed his [or her] tortious conduct at that forum."  <u>Id.</u> at 265-66.  As to the third element, the plaintiff must point to the defendant's "specific activity" aimed at the forum and show that the defendant "knew" the brunt of the harm would be felt therein.  <u>Id.</u>  That a plaintiff experienced a particular injury or harmful effect in a forum is insufficient to establish the requisite contacts with that forum.  <u>See</u> <u>Walden v. Fiore</u>, 571 U.S. 277, 290 (2014).  Likewise, a defendant's mere knowledge of plaintiff's connection with the forum does not alone satisfy this test.  <u>See id.</u> at 289.  The "relationship among the defendant, the forum, and the litigation" still guides the inquiry in intentional tort cases.  <u>Id.</u> at 291 (quoting <u>Calder</u>, 465 U.S. at 788); <u>see id.</u> at 289.

Graham Engineering raises two tortious interference claims against both defendants.  Count II is styled as a claim for tortious interference with contractual obligations between Graham Engineering and the former American Kuhne employees and current Graham Engineering employees.  Count III alleges tortious interference with the relationships between Graham Engineering and its

customers. In Count IV, Graham Engineering asserts a claim for civil conspiracy against Brunelle. The parties' arguments as to each claim concenter on the third prong of the <u>Calder</u> "effects test."

According to the complaint, Brunelle conspired with former American Kuhne employees and current Graham Engineering employees to encourage them to break their restrictive covenants with Graham Engineering for financial gain. (Doc. 1 ¶¶ 35-36, 75). Together with these employees, Brunelle created U.S. Extruders to compete with Graham Engineering and joined an email group to strategize as to same. (<u>Id.</u> ¶¶ 35, 37-39). Defendants then began withholding "customer-specific downloads of control systems" designed for Graham Engineering customers, increasing prices offered to Graham Engineering, and "no-quoting" Graham Engineering. (<u>Id.</u> ¶¶ 44, 46-47). ProSystems and U.S. Extruders eventually integrated. (<u>Id.</u> ¶ 43). Graham Engineering contends that defendants sought to undermine its customer relationships by jeopardizing the AKcess systems, causing said customers to engage U.S. Extruders to provide similar services. (<u>Id.</u> ¶¶ 40-42).

Graham Engineering argues that the <u>Calder</u> "effects test" is satisfied because defendants' "intent was to harm [Graham Engineering's] business, much of which is in Pennsylvania." (Doc. 15 at 14). We disagree. Graham Engineering's connection to Pennsylvania, and the fact that Graham Engineering may have sustained harm in this state, is simply not enough to establish personal jurisdiction

over defendants.  See Walden, 571 U.S. at 289-90.  Nothing in the record indicates that defendants expressly aimed their allegedly tortious conduct at Pennsylvania.

It is conceivable that at least some of the former American Kuhne employees and current Graham Engineering employees reside in Pennsylvania, but Graham Engineering fails to identify the employees' residences or how and where Brunelle communicated with them regarding creation of U.S. Extruders.  (See Doc. 1 ¶¶ 35, 38; see also Doc. 10-2 ¶¶ 31-33).  The complaint is also silent as to U.S. Extruders' principal place of business.[3]  (See id. ¶ 35).  And Graham Engineering provides no meaningful insight as to which of its customers suffered from defendants' decision to withhold downloads for control systems or where those customers are located. We cannot conclude, on these facts, that defendants expressly aimed their purportedly tortious activity at Pennsylvania or that Pennsylvania was the focal point of this tortious activity.

### D.    Jurisdictional Discovery

The court has a responsibility to assist plaintiffs by allowing jurisdictional discovery unless the assertion of personal jurisdiction is "clearly frivolous."  Toys "R" Us, 318 F.3d at 456 (citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)).  A plaintiff need only set forth factual allegations that suggest "with reasonable particularity" the possible existence of the requisite

---

[3] Neither the complaint, nor either parties' declaration, identifies the place of incorporation or principal place of business for U.S. Extruders.  (See Docs. 1, 10-2, 15-1).  Defendants assert that U.S. Extruders is a Rhode Island company, (Doc. 10 at 12), and the complaint notes that Brunelle "planned to relocate ProSystems to the exact same building occupied by U.S. Extruders," (Doc. 1 ¶ 45).

"contacts between the party and the forum state." <u>Mellon Bank</u>, 960 F.2d at 1223; <u>see</u> <u>also</u> <u>Toys "R" Us</u>, 318 F.3d at 456.  General allegations that defendants transact business in the forum do not entitle plaintiffs to jurisdictional discovery; plaintiffs must produce evidence suggesting that discovery will bear fruit.  <u>Brown v. AST Sports Sci., Inc.</u>, No. 02-1682, 2002 WL 32345935, at *10 (E.D. Pa. June 28, 2002) (citations omitted); <u>see</u> <u>also</u> <u>Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"</u>, 47 F. App'x 73, 77 (3d Cir. 2002) (nonprecedential).  A court weighing a jurisdictional discovery request must "accept the plaintiff's allegations as true, and . . . construe disputed facts in favor of the plaintiff." <u>Toys "R" Us</u>, 318 F.3d at 457 (citation omitted).

Defendants do not oppose Graham Engineering's request for jurisdictional discovery.  (<u>See</u> Doc. 20).  Jurisdictional discovery may confirm that defendants' alleged interactions with former American Kuhne employees and current Graham Engineering employees for the purpose of forming U.S. Extruders were in fact directed at Pennsylvania.  Graham Engineering's assertion of jurisdiction is not "clearly frivolous." <u>Toys "R" Us</u>, 318 F.3d at 456 (citing <u>Mass. Sch. of Law at Andover, Inc.</u>, 107 F.3d at 1042).  We will grant Graham Engineering's request for jurisdictional discovery on its intentional tort claims.

**IV.**    **Conclusion**

The court will deny defendants' motion (Doc. 9) to dismiss Graham

Engineering's breach of implied contract claim in Count I.  The court will defer

ruling on defendants' motion as it pertains to Graham Engineering's intentional tort

claims pending a period of jurisdictional discovery, which will illuminate whether

the court possesses specific jurisdiction over defendants as to Counts II through IV.

An appropriate order shall issue.


                                         /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania


Dated:    February 26, 2019